Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

Civil Division

United States Courts
Southern District of Texas
FILED
**March 27, 2024**
Nathan Ochsner, Clerk of Court

LAKISHA SHANEE JONES

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Katy Indepemdent School District

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

) ) ) ) ) ) ) ) ) ) ) ) ) )

Case No. **4:24cv1039**
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*   ☐ Yes   ☒ No

## COMPLAINT FOR A CIVIL CASE

**I.   The Parties to This Complaint**

   **A.   The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | LAKISHA SHANEE JONES |
   | Street Address | 14855 Memorial Drive #1518 |
   | City and County | Houston/Harris County |
   | State and Zip Code | Texas 77079 |
   | Telephone Number | 713-231-8587 |
   | E-mail Address | IEPGENIUS@GMAIL.COM |

   **B.   The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 7

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Katy Independent School District |
| Job or Title (if known) | Texas Local School District |
| Street Address | 6301 S. Stadium Lane |
| City and County | Katy/Harris County |
| State and Zip Code | Texas 77494 |
| Telephone Number | 281-396-6000 |
| E-mail Address (if known) | communications@katyisd.org |

Defendant No. 2

| | |
|---|---|
| Name | Justin R. Graham |
| Job or Title (if known) | Katy ISD General Council |
| Street Address | 6301 S. Stadium Lane |
| City and County | Katy/Harris County |
| State and Zip Code | Texas 77494 |
| Telephone Number | 281-396-6000 |
| E-mail Address (if known) | communications@katyisd.org |

Defendant No. 3

| | |
|---|---|
| Name | Brian Schuss |
| Job or Title (if known) | Katy ISD Title IX Coordinator Human Resources |
| Street Address | 6301 S. Stadium Lane |
| City and County | Katy/Harris County |
| State and Zip Code | Texas 77494 |
| Telephone Number | 281-396-6000 |
| E-mail Address (if known) | communications@katyisd.org |

Defendant No. 4

| | |
|---|---|
| Name | Dr. Kenneth Gregorski |
| Job or Title (if known) | Katy ISD Superintendent |
| Street Address | 6301 S. Stadium Lane |
| City and County | Katy/Harris County |
| State and Zip Code | Texas 77494 |
| Telephone Number | 281-396-6000 |
| E-mail Address (if known) | communications@katyisd.org |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question     ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A. **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

> TITLE VI of the Civil Rights Act of 1964 and TITLE VII of the Civil Rights Act of 1964
> TITLE II of the American with Disabilities Act
> SECTION 105 of the Family Medical Leave Act

B. **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

    a. If the plaintiff is an individual
       The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

    b. If the plaintiff is a corporation
       The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

    a. If the defendant is an individual
       The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

        The defendant. *(name)* [_____], is incorporated under the laws of the State of *(name)* [_____], and has its principal place of business in the State of *(name)* [_____].

        Or is incorporated under the laws of *(foreign nation)* [_____], and has its principal place of business in *(name)* [_____].

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

[_____]

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

***SEE ATTACHED PAGES***

PLAINTIFF:
LAKISHA SHANEE JONES
OCCUPATION/JOB TITLE:
TEXAS STATE BOARD OF EDUCATION CERTIFIED TEXAS EDUCATIONAL DIAGNOSTICIAN & TEXAS EDUCATOR (EC-12 SPECIAL EDUCATION; EC-12 ENGLISH AS A SECOND LANGUAGE; EC-4 GENERALIST; 4-8 GENERALIST; 8-12 ENGLISH LANGUAGE ARTS AND READING
COMPLAINT INVOLVING VIOLATION(S) OF:
THE UNITED STATES OF AMERICA'S TITLE VI of the Civil Rights Act of 1964 and Title VII of the Civil Rights Act of 1964

It is the policy of the U.S. Commission on Civil Rights to promote a safe environment for its employees free from threats of physical violence, harassment, intimidation, and other disruptive behavior.

1. I was the victim of inappropriate discriminatory and racially biased behavior in the workplace; an employee was disciplined in an unwarranted, aggressive manner and subsequently fired after being wrongfully accused of misconduct.

o   Issued Memorandum/Directive for inappropriate contact/communication with parents and students.
   □   Communication with parents and students is in my job description. Campus School Psychologists (Kacee Soto and Jennifer Campbell) along with Speech Language Pathologist Lisa Dunwoody who were all white Assessment Staff Personnel were never questioned about their communication with parents or students. When School Psychologists facilitated Manifestation Determination Meetings (MDR), they were never questioned by the Administration if it was customary for them to contact parents before an MDR meeting, nor issued a Memorandum for communicating with parents. I was questioned in the presence of district ESC staff, namely Kara Landgerbe, Director, Evaluations & Specialized Programs regarding this and had to share that it was my responsibility to communicate with all parties involved in the preparation for MDR meetings I facilitate around late January of 2023.
   □   Tiffany Shirey and Shalonda Dumas Stated I pulled a student's shirt down and took a student's phone in Shelby Gimmestad's English class, two weeks after the supposed incident occurred. When asked for statements, student names, reports, and why I was not promptly notified of this allegation two weeks prior, I did not receive any proof/valifation of these allegations. This is on recording. Gimmestad is from Louisiana like Shirey the Special Education Administrator and the two are very close friends. Gimmestad supposedly brought forth these allegations as they were both on the English team the year(s) before at Paetow. This was admitted in a private court hearing Katy ISD held with a lawyer they hired. Interestingly, the day of this allegation, Gimmestad and me had a conversation before I left her class about her expecting a child. We discussed how they were keeping it quiet at the moment, especially from the students. So it is interesting that this is the same class that I supposedly disrupted and attacked students in.

o   Issued Memorandum/Directive for allowing a minor to revoke consent to be evaluated. A statement made by the School Psychologist to the Administrators.
   □   Provided letter from student's guardian/mother asking for consent for her student to be tested be retracted. My Supervisor indicated to Admin that this is customary as evident in the Texas Procedural Safeguards.

o   Issued Memorandum/Directive for refusing to evaluate a student for Special Education after a Counselor's request, and that the student was failing classes because of me. A statement made by the Associate Administrator Shalonda Dumas and Tiffany Shirey.
   □   Asked Dumas to call the parent and transfer the call to the conference room so all parties could hear that the parent did not want an evaluation for her student during the Fall semester. The call was never transferred. This meeting was recorded. Parents have the right to revoke consent to evaluate their student. Only parents can grant consent to test or not to test unless it is court-ordered per Texas Law and Federal Law.
   □   Later the parent, Antoinette Russell asked for the evaluation to prove that her K. Straughn child did not require specialized programming and was grieving due to recently losing a grandparent and relocating. This same parent later provided a written statement to Katy ISD Officials to substantiate the aforementioned to refute what the Administrator erroneously purported to my Supervisor.

o   Reprimanded and held to different standards than others in my department. Reprimanded for attending Training for my state certification and job role in the district.
   □   After following my department's guidelines (Amy Brochhausen's guidelines) to attend a TEDA training in October of 2021, I was one of the first to show interest in attending the TEDA Conference on the Google

**PLAINTIFF:**

LAKISHA SHANEE JONES

**OCCUPATION/JOB TITLE:**

TEXAS STATE BOARD OF EDUCATION CERTIFIED TEXAS EDUCATIONAL DIAGNOSTICIAN & TEXAS EDUCATOR (EC-12 SPECIAL EDUCATION; EC-12 ENGLISH AS A SECOND LANGUAGE; EC-4 GENERALIST; 4-8 GENERALIST; 8-12 ENGLISH LANGUAGE ARTS AND READING

**COMPLAINT INVOLVING VIOLATION(S) OF:**

THE UNITED STATES OF AMERICA'S **TITLE VI of the Civil Rights Act of 1964** and **Title VII of the Civil Rights Act of 1964**

It is the policy of the U.S. Commission on Civil Rights to promote a safe environment for its employees free from threats of physical violence, harassment, intimidation, and other disruptive behavior.

1. I was the victim of inappropriate discriminatory and racially biased behavior in the workplace; an employee was disciplined in an unwarranted, aggressive manner and subsequently fired after being wrongfully accused of misconduct.

    - **Issued Memorandum/Directive for inappropriate contact/communication with parents and students.**
        - Communication with parents and students is in my job description. Campus School Psychologists (Kacee Soto and Jennifer Campbell) along with Speech Language Pathologist Lisa Dunwoody who were all white Assessment Staff Personnel were never questioned about their communication with parents or students. When School Psychologists facilitated Manifestation Determination Meetings (MDR), they were never questioned by the Administration if it was customary for them to contact parents before an MDR meeting, nor issued a Memorandum for [1]communicating with parents. I was questioned in the presence of district ESC staff, namely Kara Landgerbe, Director, Evaluations & Specialized Programs regarding this and had to share that it was my responsibility to communicate with all parties involved in

---

[1] LAKISHA SHANEE JONES 03.24.2024

1

  - the preparation for MDR meetings I facilitate around late January of 2023.
    - Tiffany Shirey and Shalonda Dumas Stated I pulled a student's shirt down and took a student's phone in Shelby Gimmestad's English class, two weeks after the supposed incident occurred. When asked for statements, student names, reports, and why I was not promptly notified of this allegation two weeks prior, I did not receive any proof/valifation of these allegations. This is on recording. Gimmestad is from Louisiana like Shirey the Special Education Administrator and the two are very close friends. Gimmestad supposedly brought forth these allegations as they were both on the English team the year(s) before at Paetow. This was admitted in a private court hearing Katy ISD held with a lawyer they hired. Interestingly, the day of this allegation, Gimmestad and me had a conversation before I left her class about her expecting a child. We discussed how they were keeping it quiet at the moment, especially from the students. So it is interesting that this is the same class that I supposedly disrupted and attacked students in.

- **Issued Memorandum/Directive for allowing a minor to revoke consent to be evaluated. A statement made by the School Psychologist to the Administrators.**
  - Provided letter from student's guardian/mother asking for consent for her student to be tested be retracted. My Supervisor indicated to Admin that this is customary as evident in the Texas Procedural Safeguards.

- **Issued Memorandum/Directive for refusing to evaluate a student for Special Education after a Counselor's request, and that the student was failing classes because of me. A statement made by the Associate Administrator Shalonda Dumas and Tiffany Shirey.**
  - Asked Dumas to call the parent and transfer the call to the conference room so all parties could hear that the parent did not want an evaluation for her student during the Fall semester. The call was never transferred. This meeting was recorded. Parents have the right to revoke consent to evaluate their student. Only parents can grant consent to test or not to test unless it is court-ordered per Texas Law and Federal Law.

  - Later the parent, Antoinette Russell asked for the evaluation to prove that her K. Straughn child did not require specialized

2

programming and was grieving due to recently losing a grandparent and relocating. This same parent later provided a written statement to Katy ISD Officials to substantiate the aforementioned to refute what the Administrator erroneously purported to my Supervisor.

- **Reprimanded and held to different standards than others in my department. Reprimanded for attending Training for my state certification and job role in the district.**
    - After following my department's guidelines (Amy Brochhausen's guidelines) to attend a TEDA training in October of 2021, I was one of the first to show interest in attending the TEDA Conference on the Google Spreadsheet link. On the day of the conference found out my supervisor did not pay for me to attend, but I stayed at the conference for two days held in Aldine ISD after contacting my Supervisor Amy's secretary, Sharon to sort out the confusion. A week later, I was questioned by Campus Administration, Stephanie Rodriguez and Shalonda Dumas, and again later in the presence of Amy as to *who* permitted me to attend the training and that I was supposed to complete a form so *they* could permit me to attend trainings. The meeting is recorded.
    - After speaking with my fellow district Diagnosticians, Robbie Hamilton, Ellena Armbruster, Jordan Golbiowski, and Mindy Nash to name a few, no one had ever heard of a form we needed to give campus Admin to attend a training shared by our department. Any Diag that wanted Amy to pay for them to attend the two-day HouMet conference, attended. It was apparent that it was only a problem that I attended the HouMet training, despite footing the cost personally. Why would it be okay for other Diags to attend, but not me? We all have to acquire the same number of hours to renew our Texas Certifications, so obstruction from training should never happen.

- **Disciplined differently than others in my department or in association with my department.**
    - Written up for initiating a cog eval that I never truly started on a student. Explained the mishap to the parent as we reviewed the previous meeting data who appreciated the transparency and was okay with the hiccup. Noticed that the White Diagnostician, Angela Moore was never written up nor reprimanded for not holding a Revocation of Services meeting for student Jeffery

3

- Wilson, a Special Education Transfer Student from Wisconsin. This is a Federal and State Guideline. I had to ask the parent to provide a copy of the Revocation Letter she signed months later as no record was in the district's system.
  - Brandy Risinger was asked to contact a parent ASAP and reschedule a meeting from Campus Admin Tiffany Shirey and failed to do so in or around February of 2023 I was told to cease communication with the parent immediately. When Risinger failed to do as instructed, the parent showed up at the school the day she thought the meeting was held. I was later scolded and reprimanded for not contacting the parent to tell her that the meeting was canceled instead of Risinger, who was initially charged with handling the case. There is an email available to substantiate this.
  - When Maria Isabelle Katz, the SpEd Clerk at Paetow at the time failed to label a meeting correctly, causing me to decline the meeting thinking I did not have to attend; I was issued a Memorandum for not attending an Annual meeting although I was only required to attend REED meetings (to evaluate students) and Review Annuals (to review my testing/report). The School Psychologist, Jennifer Campbell, shared with me that when she noticed I was not in the meeting, she told them that I had to be present. No one in the meeting, including the ARD Facilitator Nakeira Dalal in charge of calling participants to the meetings, did not call my office. I was available to meet with the committee if necessary.
  - I was given extra duties due to this missed meeting. I was ordered by Amy to keep a spreadsheet to document who all the Assessment Team personnel

Nonetheless, the aforementioned remained in my Katy ISD Personnel File and was used to issue a low End of Year Rating in one area which was the reason I was told by my Supervisor I had to remain in that working environment. The Campus Administrators are not my Supervisors and I was not under their "leadership" but appointed by the Katy ISD Special Education Department to their campus. As an Itinerant Staff member, I was not under their jurisdiction. They did not hold the credentials to supervise me in my position.

1. I reported the misconduct against myself and the aforementioned students and their families with disabilities to Katy ISD Administrators, Coordinators, Directors, Officers, and Superintendents from 2020-2023 as was expected.

4

**42 U.S.C. § 1975a** *Employees and applicants are to be provided a full and fair opportunity for employment, career advancement, and access to programs without regard to race, color, religion, national origin, disability (physical or mental), sex, age, sexual orientation, gender identity, genetic information, or parental status.*

- From 2020-2023, I reported several discriminatory, harassing, and retaliatory behavior and tactics by Katy ISD Administrators and staff members to my department lead, Amy Brochhausen, and the Katy ISD Human Resource Department through Heather Bowman, my assigned point of contact.

    1. 2020/21 school year KISD meeting recording is available upon request.
    2. Level One Grievances available upon request
    3. Rebuttals to Memorandums available upon request
    4. Written Statement(s) from the parents of involved protected students are available upon request
    5. Former and Current employee witnesses to incidences are available upon request

The U.S. Commission on Civil Rights' policy defines harassment/harassing conduct as ***any unwelcome conduc***t, verbal or physical, based on an individual's race, color, sex, age, religion, national origin, disability, sexual orientation, gender identity, genetic information, parental status or retaliation/reprisal for making reports or allegations of harassment or providing information related to such allegations when:
 **(1) The behavior can reasonably be considered to adversely affect the employee's work or the general work environment or
(2) An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct.**

Commission employees who believe they have been the subject of an incident of harassing conduct in violation of the U.S. Commission on Civil Rights Policy Statement on Anti-Harassment must report the matter immediately to their supervisor or Human Resources.

**The Commission's Anti-Harassment procedures** are designed to assist the Commission in
1) preventing harassing conduct before it becomes severe or pervasive, i.e., harassment within the meaning of the anti-discrimination laws 2) conducting a prompt, thorough, and impartial investigation into allegations of harassing conduct,

5

and 3) taking immediate and appropriate corrective action when the Commission determines that harassing conduct has occurred.

The Commission's Anti-Harassment Procedures were disregarded at the Local (Katy ISD), State (Texas Education Agency; Texas Workforce Commission), and Federal (U.S. Equal Employment Opportunity Commission) level and institutions/organizations. The harassment I was subjected to during the 2020-2023 school years in Katy ISD became severe and pervasive after following the U.S. Commission on Civil Rights Policy Statement on Anti-Harassment guidance on reporting workplace harassment and discrimination to a supervisor or Human Resources. Due to my reporting being considered whistleblowing and a multitude of Texas Labor Code violations reported, it is evident that my report of harassment, discrimination, retaliation, etc was intentionally disregarded by members of Katy ISD, the Texas Workforce Commission, and in select sectors of the U.S. Federal Government.

## **COMPLAINT INVOLVING VIOLATION(S) OF:**

THE UNITED STATES OF AMERICA'S **TITLE II of the Americans with Disabilities Act**

Title II of the Americans with Disabilities Act (ADA) prohibits discrimination based on disability in all programs, activities, and services of state and local governments.

### **Harassment**

It is illegal to harass an employee because of a current or past disability an actual or perceived physical or mental impairment that is not transitory and minor, or for association with an individual with a disability. Harassment can include offensive remarks about a person's disability. Harassment is illegal when it is so frequent or severe that it creates a hostile or offensive work environment or results in an adverse employment decision (such as the victim being fired or demoted). Unlawful harassment may occur whether the harasser is the victim's supervisor, a supervisor in another area, a co-worker, or someone who is not an employee of the employer, such as a client or customer.

**Source:** https://www.eeoc.gov/disability-discrimination-and-employment-decisions

I enlisted the support of the Katy ISD Employee Assistance Program in or around October of 2021 for on-the-job incidents experienced. In their program, my state of mental stability at the time qualified me for a Mental Health Therapist and a

6

Behavior Coach with AbleTo in association with Aetna. The condition I was being treated for was Anxiety and Depression. My supervisor(s) were aware along with campus Administrators of my condition. Incidents were reported to the Human Resources department.

1. Katy ISD refused "reasonable accommodations" and changed how my job was to be done, obstructing equity in my work success after filing a Level One Grievance in April of 2022 and subsequent report of Harassment and Discrimination Report to the district's Title IX Coordinator in October of 2022.
2. Additional "Duties" were assigned to me due to the errors/mistakes of other staff members from August 2022 until January 30, 2023.
3. My supervisors and administrators were aware of the toll their egregious behaviors were affecting my mental health and wellness since I first reported suspected behaviors and incidents during the 2020-21 school year. Despite this knowledge, members of Katy ISD demoted me, harassed me, paid me less due to my disability at the time, and ostracized me from the community I was charged with servicing after filing a report with the Title IX Coordinator.
4. The U.S. Department of Education, Office of Civil Rights received a report of this and other concerns about violations of the Individuals with Disabilities Education Improvement Act to children with Special Needs, highlighting how I was being prevented from executing Federal guidelines and State guidelines associated with Special Education and it's affect on my health and the health of the students served. My inquiry/report was referred to the U.S. Department Office for Equal Employment Opportunity Commission(EEOC) in or around June of 2022.
5. I contacted the EEOC switchboard in or around August 2022 and October 2022.
6. I reported incidents to the Texas Workforce Commission from June 2022 until in or around August 2024.
7. I emailed the EEOC points of known contact(s) and called the EEOC switchboard a few times between December 2022 and January 2024 to obtain the status of my June 2021 filing from the USDOE OCR office.

The handling of my case was insufficient and grossly untimely and therefore, violations ensued, including the intentional obstruction of my taking FMLA for the complete 8 weeks after being diagnosed with severe anxiety and depression again in January of 2023 (and prior in October of 2021), by my Mental Health Therapist. Upon returning to work 4 weeks later, and being told to return to work by my employer, not doctor, I did not return to an equivalent position. Essentially, I was demoted and not granted the opportunity to evaluate students, write full and individual reports, and perform other functions of my position as a Diagnostic Specialist (Educational Diagnostician in the district.

By Federal regulation, for a company to qualify to offer FMLA, they must abide by regulations that call for employees to be returned to a new but nearly identical position, encompassing:

maintaining the same general work schedule or shift at a geographically close worksite:

1. Requires same duties, level of skill, responsibilities, status, authority, effort, benefits, and pay
2. Holds the same status

**COMPLAINT INVOLVING VIOLATION(S) OF:**

THE UNITED STATES OF AMERICA'S **SECTION 105 of the Family Medical Leave Act**

1. There was an uncomfortable delay in receiving FMLA paperwork after two requests to my assigned Leave Specialist.
2. My Leave Specialist inquired where I received the FMLA paperwork I submitted to her for processing, stating that the district tracks the paperwork.
3. My Leave Specialist shared that I do not state how much FMLA time I need. That is not up to me.
4. My PCP issued two weeks of FMLA pending a collaboration with my Therapist who was an expert in the field of Mental Health and Wellness. She was given my Therapist's information. My Therapist's office sent 40 pp of documentation to my PCP to extend my FMLA to the complete 8 weeks, pending more depending on progress.
5. My PCP's office stated they never received the paperwork. The Therapist's office has a Transmission of Proof that it was. I was then instructed that I could not request documentation from my PCP's office and that I would have to go through Memorial Hermann to obtain my medical records from the PCPs office.
6. Katy ISD contacted me to come back to work after 1 month, despite my never having another meeting with my PCP to receive exit paperwork. My PCP refused to complete the paperwork to extend my FMLA to 8 weeks as suggested by my Therapist.

8

I never received the time I needed to recover; interference was suspected throughout the process. Once I returned from FMLA at the end of February 2023, I was called to a meeting with Katy ISD Supervisors in April of 2023 and May of 2023, although I was isolated during those months and not assigned little to no duties in my job description.

9

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

> I ask the court to order reprieve for both compensatory and punitive remedies for multiple civil violations that led to loss of enjoyment in life, wage, mental anguish and pain. The fabrications presented were slanderous and were used to intentionally defame my character so that the integrity of my business I.E.P Genius Educational Consulting would be questioned. I ask for an apology and a token of the district's good faith effort to right the wrongs of how I was mistreated and misrepresented witin the district and within the community.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 03/23/2024

Signature of Plaintiff: *[signature]*
Printed Name of Plaintiff: LAKISHA SHANEE JONES

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

| | |
|---|---|
| State and Zip Code | |
| Telephone Number | |
| E-mail Address | |